UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES K. BARKER,                           Case No. 1:19-cv-993
    Plaintiff,                                       Cole, J.
                                                   Litkovitz, M.J.
    vs.

COMMISSIONER OF                         **REPORT AND**
SOCIAL SECURITY,                        **RECOMMENDATION**
    Defendant.

Plaintiff Charles K. Barker brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 19).

**I. Procedural Background**

Plaintiff filed his applications for DIB and SSI on October 29, 2015, alleging disability since October 7, 2015 due to "a cervical spine injury, neuropathy, and shoulder issues." (Tr. 109, 123). The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Anne Shaughnessy. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing on June 20, 2018. On October 2, 2018, the ALJ issued a decision denying plaintiff's DIB and SSI applications. On September 20, 2019, the Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since October 7, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*) (Exhibits 6D; 8D).
>
> 3. [Plaintiff] has the following severe impairments: status post anterior cervical discectomy and fusion (ACDF); rupture of tendon and rotator cuff tear on the right, status post surgery; herniated discs of the thoracic spine; degenerative changes of the right shoulder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, or scaffolds. He can occasionally crawl. He can reach overhead with the right arm occasionally. He should avoid concentrated exposure to vibration and he should avoid all exposure to hazards.
>
> 6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Plaintiff] . . . was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. [Plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

> 8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CRF 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and CRF Part 404, Subpart P, Appendix 2).
>
> 10. Considering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 7, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-30).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Medical Evidence**

On April 16, 2016, Dr. Timothy Burns, D.O., performed a consultative examination. (Tr. 456-63). At this visit, plaintiff reported that he could sit for 1 hour, stand for 1.5 hours, walk 1 mile, and lift 30 pounds. (Tr. 457). Though he observed a limited range of motion, Dr. Burns also noted that plaintiff had a normal gait and was "[w]ell appearing" with "[n]o acute distress" or "assistive device for ambulation." (Tr. 458-59). Plaintiff exhibited 4/5 strength in the right biceps and triceps but otherwise exhibited 5/5 strength in the right upper extremity, bilateral lower extremities, and bilateral grip. (*Id.*). Plaintiff's "[l]ight touch sensation [was] intact in the bilateral upper and lower extremities." (Tr. 459). Dr. Burns concluded that other than operating heavy machinery and limitations on lifting and carrying, each affected by his limited range of neck motion or right upper extremity weakness, plaintiff did "not appear to have any limitations with sitting, standing, walking, handling, hearing, speaking[]or with memory." (Tr. 459).

On May 3, 2017, neurosurgeon Dr. Donald Oxenhandler examined plaintiff. (Tr. 688-92). Plaintiff exhibited 5/5 testing "in all myotomes of the upper extremities" and normal light touch sensation in the lower extremities. (Tr. 688). He also exhibited a normal gait. (*Id.*). At a

follow-up on June 19, 2017, Dr. Oxenhandler reviewed a cervical MRI that showed multiple herniated discs. (Tr. 692). The most significant was T9 10, where plaintiff exhibited central disc herniation with significant cord compression. (*Id.*). Dr. Oxenhandler found it "[d]ifficult to relate all of [plaintiff's] symptoms to his presenting complaints. . . ." (*Id.*).

Plaintiff was examined by Dr. Lee Greiner, a consulting neurosurgeon, for a new patient visit on September 22, 2017. (Tr. 695-696). On physical examination, plaintiff displayed a normal gait, good strength of the proximal and distal muscles in all four extremities, and limited range of motion of the right shoulder. (Tr. 695). He was somewhat tender in that location and wearing a pain patch. (*Id.*). Reflexes in the upper and lower extremities were 2+ and symmetrical throughout. There was no clonus or Babinski sign. (*Id.*). Dr. Greiner reviewed x-rays and an MRI of the thoracic spine which showed a T9-10 herniation with cord compression and a T12-L1 herniation with effacement of the dura. (*Id.*). Dr. Greiner recommended a thoracic myelogram CT and follow up with Dr. Bohinski for treatment recommendations. (Tr. 696).

On October 27, 2017, plaintiff presented to Dr. Bohinski for a new patient visit. (Tr. 693-96). On examination, Dr. Bohinski found:

> [Plaintiff] [wa]s able to stand and rise independently. Motor strength is 5/5 throughout. Gait is well coordinated and stable. He walks without an assistive device. Deep tendon reflexes are diminished throughout. There are no pathologic reflexes present. Toes are downgoing to plantar stimulation. There is no clonus. There is no spasticity. There are no Hoffmann's reflexes.
>
> . . .
>
> [Plaintiff's cervical MRI] shows evidence of a well healed anterior posterior spinal fusion and fixation without evidence of residual or recurrent spinal stenosis.

(Tr. 693). Dr. Bohinski then concluded that the symptoms plaintiff reported were inconsistent with what he observed from plaintiff's cervical and thoracic MRIs:

6

> [Plaintiff] has evidence of multiple thoracic disc herniations, but he does not have any evidence of myelopathy on examination. The diffuse electrical-like symptoms he is having in his arms and legs are not secondary to the disc compression in his thoracic spine. I would not expect the thoracic spine to cause proximal symptoms in the upper extremities.
>
> Therefore this is likely nonspecific myoclonic activity. There is no evidence of cord gliosis and no long tract signs. I do not feel he is indicated for a thoracic decompression or discectomy procedure at this time. . . . I feel that he will be harmed by an operation more than helped.

(Tr. 694). Dr. Bohinski advised plaintiff to "continue pursuing a long term disability claim" and recommended "[p]ermanent activity restrictions[,]" including no "heavy lifting, repetitive bending, twisting or exertional activity or aggressive leisure activity, such as off-road vehicle riding or extreme sports." (Tr. 694).

In a June 19, 2018 letter to plaintiff's counsel, Dr. Bohinski reiterated his findings from the October 27, 2017 visit and opined that plaintiff should not return to concrete work. (Tr. 1215-16). Dr. Bohinski did not reexamine plaintiff and expressly declined to provide a functional capacity evaluation or physical ability assessment. (Tr. 1217).

On December 28, 2017, plaintiff was examined by certified nurse practitioner (CNP) Roseanne McKay. (Tr. 830-33). Plaintiff reported "negative" for "gait disturbance." (Tr. 832). CNP McKay observed that her "visual of all four extremities [wa]s normal," "[c]ranial nerves II through XII [were] grossly intact," and that plaintiff's "[s]ensory" was "normal." (*Id.*).

**E. Specific Error**

Plaintiff argues that the ALJ improperly gave less than controlling weight to a treating physician, Dr. Robert Bohinski, without good reasons—giving a portion of his opinion only "some weight." (Tr. 27). In particular, plaintiff argues that the ALJ misapplied the treating physician rule by evaluating Dr. Bohinski's opinion under the rubric provided in 20 C.F.R. §

7

404.1527(c)(2)-(6)[1] without first determining whether his opinion was entitled to controlling weight, i.e., whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [plaintiff's] case record. . . ." 20 C.F.R. § 404.1527(c)(2). Plaintiff contends that this error adversely affected the ALJ's residual functional capacity (RFC) determination. Plaintiff asserts that if the ALJ had assigned Dr. Bohinski's opinion proper, controlling weight, she may not have determined that plaintiff had an RFC for a restricted range of light work.

In response, the Commissioner first contends that Dr. Bohinski is not a treating source as defined in 20 C.F.R. § 404.1527(a)(2). Second, the Commissioner argues that even if the Court were to conclude that the treating physician rule applies to Dr. Bohinski's opinion, the ALJ gave good reasons for discounting his opinion: it was vague, internally inconsistent, and in conflict with other medical evidence.

In reply, plaintiff argues that whether Dr. Bohinski is a treating physician is a determination reserved to the Social Security Administration (the agency).

  *i. The treating physician rule*

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997) (citation omitted). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are

---

[1] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Report and Recommendation.

generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.") (citation omitted). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (citation omitted).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion "controlling weight," the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature, and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting C.F.R. § 404.1527(c)(2)). Those reasons

must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p,[2] 1996 WL 374188, at *5).

Opinions from nontreating and nonexamining sources are never assessed for "controlling weight." *Gayheart,* 710 F.3d at 376. The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, supportability, and other factors "which tend to support or contradict the medical opinion," but only if a treating source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). "A properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians." *Gayheart,* 710 F.3d at 379-80 (quoting SSR 96-6p,[3] 1996 WL 374180, at *3) ("In appropriate circumstances, opinions from . . . psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.")).

### ii. Is Dr. Bohinski a treating physician?

Plaintiff argues that while the ALJ identified Dr. Bohinski as a treating physician, the ALJ failed to properly apply the treating physician rule. The Commissioner contends that it is questionable whether Dr. Bohinski is a treating source whose opinion must be evaluated under the rule. Plaintiff asserts that this Court cannot reexamine the ALJ's identification of Dr.

---

[2] On March 27, 2017, the agency published final rules that revised the rules and regulations applicable to the evaluation of medical evidence for claims filed on or after that date. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844-45, 5869, 5880. SSR 96-2p was rescinded effective March 27, 2017. Because plaintiff filed his claims before March 27, 2017, SSR 96-2p applies here.

[3] SSR 96-6p was rescinded effective March 27, 2017. Because plaintiff filed his claims before March 27, 2017, SSR 96-6p applies here.

10

Bohinski as a treating physician because that identification is reserved to the agency. (Doc. 19 at 3, citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181 (6th Cir. 2009)).

Contrary to plaintiff's contention, the classification of a medical source is a question of law which the Court reviews de novo. *Blakley*, 581 F.3d at 407 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). Any factual findings by the ALJ that bear on the question are accorded substantial deference. *Id.*[4]

Here, the ALJ did not make a factual determination that Dr. Bohinski was a treating physician. In her decision, the ALJ summarized the treating physician rule and the other factors used to assess opinion weight in the two paragraphs immediately preceding her evaluation of Dr. Bohinski's opinion, but she did not explicitly find that Dr. Bohinski was a treating physician. (Tr. 27-28). Therefore, there is no factual finding by the ALJ to be accorded substantial deference. *See Blakley*, 581 F.3d at 407.

The Court finds that Dr. Bohinski is not a treating physician whose opinion may be entitled to controlling weight. Pursuant to 20 C.F.R. §§ 404.1502 and 416.902,[5] a physician qualifies as a "treating source" if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition(s)." *Id*. A physician is a "nontreating source" if the physician has examined the claimant "but does not have, or did

---

[4] *Simpson*, cited by plaintiff, is distinguishable. In *Simpson*, the Court held that the determination of a claimant's RFC is a domain that the court should not determine in the first instance. 344 F. App'x at 192. The classification of a medical source, however, is not such a domain.

[5] Sections 404.1502 and 416.902 were amended effective March 27, 2017. Because plaintiff filed his claims before March 27, 2017, the prior versions of these code sections apply.

not have, an ongoing treatment relationship with" him. *Id*. The operative question in determining whether a physician is "treating" is "whether [the physician] had the ongoing relationship with [the plaintiff] to qualify as a treating physician *at the time he rendered his opinion.*" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (emphasis in the original). Even multiple examinations (let alone the single examination here) "will often not suffice" to demonstrate an ongoing treatment relationship that fits the rationale for the doctrine. *See id.* at 506-07; 20 C.F.R. § 404.1527(c)(2) ("[Treating sources] are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . ."). As Dr. Bohinski examined plaintiff on only one occasion and did not have an ongoing relationship with plaintiff when he rendered his opinion, he is not a treating physician. And because Dr. Bohinski is not a treating physician, the "good reasons" requirement in 20 C.R.F. § 404.1527(c)(2) is not implicated and the ALJ did not err by failing to apply the treating physician rule. *See id.* ("We will always give good reasons in our notice of determination or decision for the weight we give your *treating source's* medical opinion.") (emphasis added). *See also Cole*, 661 F.3d at 937.

   The opinion of a nontreating but examining medical source like Dr. Bohinski is weighed based on several regulatory factors. *See* 20 C.F.R. § 404.1527(c)(1)-(6). These include the relationship between the medical source and the claimant, the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ afforded "some weight" to Dr. Bohinski's opinion that plaintiff should do no heavy lifting, repetitive bending, twisting, exertional activity, or aggressive leisure activity and "significant weight" to his opinion that plaintiff should not return to work in concrete. (Tr. 27-28). The ALJ's weighing of Dr. Bohinski's opinion is supported by substantial evidence. First, the ALJ noted that Dr. Bohinski did not define heavy lifting, repetitive bending, twisting, exertional activity, or aggressive leisure activity. (Tr. 27). Thus, it is not apparent from Dr. Bohinski's opinion what type of "exertional activity" plaintiff was precluded from performing. In fact, Dr. Bohinski expressly declined to give an opinion on specific functional imitations. (*See* Tr. 27, citing Tr. 1217). The ALJ reasonably discounted Dr. Bohinski's vague opinion on plaintiff's functional limitations. *See, e.g., Acosta v. Comm'r of Soc. Sec.*, No. 17-12414, 2018 WL 7254256, at *10 (E.D. Mich. Sept. 6, 2018) ("Dr. Wylie does not place any specific limitations on plaintiff and indeed, says that he is not qualified to do so. This undermines his opinion [on functional limitations]."), *report and recommendation adopted*, 2019 WL 275931 (E.D. Mich. Jan. 22, 2019); *Hanna v. Colvin*, No. 5:13-cv-1360, 2014 WL 3749420, at *15 (N.D. Ohio July 30, 2014) ("[C]ourts have upheld an ALJ's rejection of a physician opinion on the grounds that it is inconsistent, unclear, or vague.") (citing *Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at * 4 (6th Cir. Aug. 12, 2010) and *Gaskin v. Comm'r of Soc. Sec.*, No. 07-1130, 2008 WL 2229848, at * 4 (6th Cir. May 30, 2008)); *Ritter v. Comm'r of Soc. Sec.*, No. 1:12-cv-122, 2013 WL 427572, at *5 (S.D. Ohio Feb. 4, 2013) (finding no error in failing to address a medical opinion that was "vague and [did] not specify any quantifiable or other particular physical . . . limitations associated with plaintiff's impairments."), *report and recommendation adopted*, No. C-1-12-122, 2013 WL 1281738 (S.D. Ohio Mar. 26, 2013).

Second, the ALJ reasonably considered the normal neurological and musculoskeletal observations made by Dr. Bohinski. The ALJ cited Dr. Bohinski's findings that plaintiff,

> was able to stand and rise independently. His motor strength was 5/5 throughout and his gait was well coordinated and stable. He walked without an assistive device. Deep tendon reflexes were diminished throughout. There were no pathologic reflexes present. Toes were downgoing to plantar stimulation. There was no clonus, no spasticity, and no Hoffman's reflexes. . . .

(Tr. 28). The ALJ reasonably determined that these objective and clinical findings were not inconsistent with light work activity and were consistent with the physical examination findings of Dr. Burns, Dr. Oxenhandler, and CPN McKay. (*Id.*). The ALJ properly discounted the weight attributed to Dr. Bohinski's opinion based on the absence of objective evidence to support his opinion.[6] *See Sanders v. Berryhill*, No. 3:16-cv-263, 2017 WL 10808813, at *2 (S.D. Ohio Aug. 15, 2017) (lack of objective support is a valid reason to discount physician's opinion), *aff'd sub nom. Sanders v. Comm'r of Soc. Sec.*, No. 17-4079, 2018 WL 5099229 (6th Cir. June 14, 2018).

Third, the ALJ noted that Dr. Bohinski offered his opinion despite his observation (also made by Dr. Oxenhandler) that plaintiff's presenting complaints did not necessarily correlate to plaintiff's symptoms. (Tr. 28, 694, 1209). *Cf.* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Finally, as the ALJ's decision reflects (Tr. 27), Dr. Bohinski examined plaintiff on a single occasion and based his opinion solely on that single exam. *See* 20 C.F.R. §

---

[6] By contrast, the ALJ gave "significant weight" to Dr. Bohinski's opinion regarding plaintiff's return to concrete work, ostensibly because it was both supported by plaintiff's thoracic MRI results showing disc herniations and consistent with Dr. Burn's opinion that plaintiff should not operate heavy machinery. (*See* Tr. 28, 459, 693).

14

404.1527(c)(2)(i) (correlating weight to frequency of treatment).  Based on the foregoing, the ALJ's decision to give only "some" weight to Dr. Bohinski's opinion regarding plaintiff's functional limitations is supported by substantial evidence and reflects due consideration of the factors applicable to nontreating medical opinions.  *See* 20 C.F.R. §§ 404.1527(c)(1)-(6).

In sum, Dr. Bohinski is not a treating physician whose opinion was governed by the treating physician rule.  The ALJ properly applied agency regulations in evaluating Dr. Bohinski's opinion, and the ALJ's decision is supported by substantial evidence.  Plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date:   10/22/2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CHARLES K. BARKER,<br> Plaintiff, | Case No. 1:19-cv-993<br>Cole, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br> Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).