UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CHARLES K. BARKER,**

      Plaintiff,

v.

**COMMISSIONER OF
SOCIAL SECURITY,**

      Defendant.

Case No. 1:19-cv-993
JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz

## OPINION AND ORDER

This cause comes before the Court on the Magistrate Judge's October 22, 2020, Report and Recommendation ("R&R") (Doc. 20), which recommends that this Court affirm the Commissioner of Social Security's ("Commissioner") decision and dismiss Charles Barker's Complaint (Doc. 3). For the reasons more fully set forth below, the Court **OVERRULES** Barker's Objection (Doc. 21), **ADOPTS** the Magistrate Judge's R&R (Doc. 20), and **DISMISSES** Barker's Complaint (Doc. 3) **WITH PREJUDICE**.

## BACKGROUND

This case arose as a result of the Social Security Administration ("SSA") denying Barker certain social security disability benefits. On November 10, 2015, Barker applied for benefits, claiming he was disabled due to injuries he sustained when a piece of machinery fell on him at work. (Benefits Appl., Certified Admin. R. ("R.") Ex. 5, Doc. 9-5, #294; Initial Evaluation, R. Ex. 7, Doc. 9-7, #461). On April 26, 2016, the SSA denied Barker's application. (*See* Initial Disability Determination and Explanation, R. Ex. 3, Doc. 9-3, #151). On reconsideration, the SSA again denied the

claim on September 30, 2016. (*See* Recons. Disability Determination and Explanation, R. Ex. 3, Doc. 9-3, #183).

Pursuant to Barker's request, an SSA Administrative Law Judge (the "ALJ") held a hearing on June 20, 2018. (Hr'g Tr., R. Ex. 1, Doc. 9-1, #80). The ALJ issued a decision denying benefits on October 2, 2018. (ALJ Decision, R. Ex. 2, Doc. 9-2, #58). The ALJ concluded that Barker could perform "light work" (as defined by SSA regulations) and therefore was not disabled. (*Id.* at #62). On September 20, 2019, the Appeals Council of the SSA declined to review the ALJ's decision. (Notice of Appeals Council Action, R. Ex. 2, Doc. 9-2, #43).

On November 25, 2019, Barker filed a Complaint asking this Court to reverse the ALJ's decision. (*See* Doc. 3). Pursuant to local rule, the Court assigned the matter to a Magistrate Judge. *See* S.D. Ohio Civ. R. 72.2; *see also* Cincinnati Gen. Order No. 14-01 (referring appeals from decisions of the Commissioner of Social Security regarding Social Security benefits to Magistrate Judges).

On April 7, 2020, Barker filed his Statement of Specific Errors (Doc. 12), setting forth the alleged errors in the ALJ's decision on his benefits claim. Barker identified only one. He challenged the ALJ's decision solely based on the ALJ's failure to afford controlling weight to the opinions expressed in a letter provided by Dr. Robert Bohinski on June 19, 2018. (*Id.* at #1285–90). Dr. Bohinski examined Barker one time, on October 27, 2017, and opined that Barker "should have permanent activity restrictions" and "should not be doing any heavy lifting, repetitive bending, twisting, or exertional activity." (Bohinski Letter, R. Ex. 9, Doc. 9-9, #1266).

2

In response to this alleged error, the Commissioner argued that Bohinski was not a treating physician, and thus his opinion was not entitled to controlling weight. (Resp. in Opp'n to Statement of Specific Errors, Doc. 18, #1307).

On October 22, 2020, the Magistrate Judge issued a Report and Recommendation, recommending that this Court dismiss Barker's case. (Doc. 20). The Magistrate Judge agreed with the Commissioner that Bohinski was not a treating physician. (*Id*. at #1336). On November 5, 2020, Barker filed a timely Objection (Doc. 21). The Commissioner responded on November 19, 2020. (Doc. 22). The matter is now before this Court.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

But that is not the only relevant standard of review here. In this case, the Magistrate Judge was reviewing a decision by an ALJ employed by the SSA. Judicial review of such decisions is quite constrained. In particular, courts are "limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive …."). Importantly, though, the reference to legal standards includes the SSA's own regulations. In other words, even if a decision is supported by substantial evidence, a court should not affirm that decision if "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Putting all that together, this Court's job is to review de novo any portion of the R&R to which Barker has objected, to determine whether, as to the identified portion, the Magistrate Judge correctly decided that the ALJ's decision applied the correct legal standards (including the SSA's own regulations) and was supported by substantial evidence.

## LAW AND ANALYSIS

For purposes of Social Security disability benefits, a disability is defined in relevant part as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). By regulation, the SSA has developed a five-step analysis to determine whether an individual has a disability. *See* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).[1] As relevant here, to be entitled to benefits, a claimant may not be gainfully employed, and must have a severe, medically determinable physical or mental impairment. *See id.* The SSA considers some impairments, listed in a regulatory appendix, to be so severe that they automatically entitle a claimant to benefits. *See id.* But if a claimant's impairment, or its equivalent, does not appear on the SSA's list, then the SSA must consider whether, in light of the impairment, the claimant can work, either by continuing to do the kind of work the claimant has done in the past (if any), or by making an adjustment to a new kind of work. *See id.* If so, the claimant is not disabled. *See id.*

Here, the parties dispute the ALJ's conclusion as to the last of these steps, namely that Barker had the capacity to adjust to performing "light work" as defined by another pair of SSA regulations. (*See* ALJ Decision, R. Ex. 2, Doc. 9-2). According to those regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. … [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567 and 416.967. It is in this context that Barker presses his sole argument here, namely that the ALJ and Magistrate Judge erred in failing to give controlling weight to Dr. Bohinski's opinion that Barker should permanently avoid

---

[1] The first of these regulatory sections applies to applications for disability insurance benefits, the second to applications for Supplemental Security Income disability benefits. *Compare* 20 C.F.R. § 404.1520(a)(2), *with* § 416.920(a)(2). Their requirements are identical in all respects relevant here.

5

certain tasks including "heavy lifting, repetitive bending, twisting, or exertional activity." (*See* Bohinski Letter, R. Ex. 9, Doc. 9-9, #1266; *see also* Obj., Doc. 21, #1343).

When a medical opinion comes from a treating physician, an ALJ of the SSA must give that opinion "controlling weight" if the opinion is well-supported by medically acceptable techniques and is consistent with other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Relatedly, an ALJ who elects to afford the opinion of a treating physician less than controlling weight must give "good reasons" for doing so. *See* 20 C.F.R. § 404.1527(c)(2).

Because opinions from treating physicians receive different consideration from opinions by non-treating physicians, a word about the rules for distinguishing between these two categories is in order. Under the applicable version of the relevant SSA regulations, a treating physician is "your own physician … who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902 (2011). A treating physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.* Consistent with that definition, the Sixth Circuit has repeatedly rejected claimants' arguments that a physician who examined them only once was their treating physician. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Instead, treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture

of [a claimant's] medical impairment(s) ...." 20 C.F.R. § 404.1527(c)(2). And the determination of whether a given physician is entitled to treating physician status depends on the relationship between the physician and the claimant at the time the physician renders the opinion in question. *Kornecky*, 167 F. App'x at 506–07.

Applying these principles, the Magistrate Judge here correctly determined that Bohinski was not Barker's treating physician. Bohinski examined Barker only one time, on October 27, 2017. (Bohinski Letter, R. Ex. 9, Doc. 9-9, #1266). Bohinski provided the opinion at issue here almost nine months later, on June 19, 2018, without having reexamined Barker, and with no indication that Bohinski otherwise treated Barker in the interim. (*Id.*). Thus, Bohinski did not have the kind of "ongoing treatment relationship" with Barker that would justify affording any of Bohinski's medical opinions controlling weight. *See* 20 C.F.R. §§ 404.1502, 416.902 (2011).

In fact, Barker's Objection offers little affirmative argument that Bohinski was Barker's treating physician beyond the vague suggestion that Bohinski "was involved in Mr. Barker's treatment"—which, as the legal standards discussed above demonstrate, is not enough. (*See* Obj., Doc. 21, #1344). Indeed, instead of seeking to prove that Bohinski was in fact a treating physician, Barker seems to go a different route altogether. He appears instead to argue that *the ALJ* considered Bohinski to be Barker's treating physician, and yet, despite that finding, refused to give Bohinski's opinions controlling weight, which, Barker says, is legal error. As to the first point, Barker concedes that the ALJ never explicitly found that Bohinski was a treating physician, but Barker argues that the ALJ's decision "strongly impl[ies]" that the ALJ

7

so regarded Bohinski because the ALJ recites the rules concerning treating physicians shortly before the ALJ's discussion of Bohinski's opinions. (*See id.*). And given the ALJ's "implied" finding that Bohinski was a treating physician, Barker claims that the ALJ erred in failing to give that treating physician's opinion controlling weight.

In fairness to Barker, the ALJ's opinion admittedly does not explicitly decide the question of Bohinski's treating physician status one way or the other. And the recitation of the rules regarding treating physicians shortly before the discussion of Bohinski's opinions provides some support for Barker's interpretation. (*See* ALJ Decision, R. Ex. 2, Doc. 9-2, #69). At the same time, though, the ALJ's conceded failure to afford Bohinski's opinions controlling weight at least suggests that the ALJ may not have regarded Bohinski as Barker's treating physician. (*See id.*). Further clouding the issue, the ALJ cited "several factors" the SSA uses to determine the weight to be given to "the opinion of *the treating physician*," but these factors only come into play if the ALJ decides *not* to give that opinion controlling weight, and the same factors are also used to determine the weight given to all medical evidence other than the opinion of the treating physician. (*See id.* (emphasis added) (citing 20 C.F.R. § 404.1527(c))). In other words, the ALJ's use of those factors does not reveal much in terms of whether the ALJ considered Bohinski a treating physician or not.

Fortunately, the Court need not get to the bottom of what the ALJ thought about that issue. That is because Bohinski's status is a question of law that the Court determines de novo. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.

8

2009) (quoting *Smith*, 482 F.3d at 876). Accordingly, the ALJ's determination on that question, whatever it was, does not bind the Court. *See id.* True, the Court must "accord substantial deference" to any factual determinations by the ALJ that bear on the legal question of Bohinski's status as a treating physician. *See id.* But Barker's Objection points the Court to no such underlying factual findings that support Bohinski's status as a treating physician, and the Court finds none. (*See* Obj., Doc. 21, #1344). Instead, as discussed above, the facts, as found by the ALJ, support a conclusion that Bohinski, who examined Barker only once, was not Barker's treating physician. (*See* ALJ Decision, R. Ex. 2, Doc. 9-2, #69). Thus, Barker's claim that the ALJ considered Bohinski to be a treating physician provides no basis for this Court to reject the R&R.

In addition to his argument based on the ALJ's alleged implied finding, Barker separately argues that the Magistrate Judge committed error in concluding that Bohinski was not Barker's treating physician based solely upon the fact that Bohinski examined Barker only once. (Obj., Doc. 21, #1344). Barker argues that a strict treating-physician-means-more-than-one-examination rule, which is what Barker claims that the Magistrate Judge applied, is not the proper legal test. Rather, he claims the test must focus more broadly on the relationship between the medical source and the claimant overall. (*Id.*).

There are two problems with that argument. First, Sixth Circuit case law strongly suggests that a single examination typically does not suffice to establish treating physician status. *See Kornecky*, 167 F. App'x at 506 ("given the nature and

9

prolonged course of Kornecky's mental difficulties, a single examination did not suffice to render [the physician in question] a treating physician"); *Smith*, 482 F.3d at 876 (physician who examined claimant only once was not treating physician); *Barker*, 40 F.3d at 794 ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once …."). Barker cites, and the Court finds, no case where a single examination established an ongoing treatment relationship.

Second, it does not appear that the Magistrate Judge applied a single-examination rule in any event. Rather, she determined that Bohinski was not Barker's treating physician because he "examined plaintiff on only one occasion *and did not have an ongoing relationship with plaintiff when he rendered his opinion …*" (R&R, Doc. 20, #1337) (emphasis added). Barker points the Court to no evidence of an "ongoing treatment relationship" between Bohinski and Barker, as the regulatory standard requires. 20 C.F.R. §§ 404.1502, 416.902 (2011). Barker also points the Court to no evidence that a single examination constituted the "frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [Barker's] medical condition(s)." *Id.* Accordingly, it was not legal error for the Magistrate Judge to conclude that Bohinski's single examination of Barker, absent any other indication of an ongoing treatment relationship, was insufficient as a matter of law to make Bohinski a treating physician.

10

Because Bohinski was not Barker's treating physician, the Court need not, and does not, consider the Commissioner's alternative argument that the ALJ gave good reasons for giving less than controlling weight to Bohinski's opinions. (*See* Resp. to Obj., Doc. 22, #1351). The "good reasons" requirement would only apply if Bohinski had been Barker's treating physician at the time Bohinski offered the opinions in question, which he was not. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

## CONCLUSION

Based on the foregoing, the Court **OVERRULES** Barker's Objection (Doc. 21), **ADOPTS** the Magistrate Judge's R&R (Doc. 20), **DISMISSES** Barker's Complaint (Doc. 3) **WITH PREJUDICE**, and **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on the Court's docket.

**SO ORDERED.**

January 6, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**